UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CARLOS J. TORRES-SANCHEZ,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:14-cv-01294-RDP |
| } | |
| **JEFFERSON COUNTY BOARD OF** } | |
| **HEALTH, et al.,** } | |
| } | |
| **Defendants.** } | |

## **MEMORANDUM OPINION**

This action arises from Plaintiff's failure to obtain a promotion to a health services administrator position. Plaintiff insists that he did not receive this promotion because Defendants Jefferson County Board of Health ("Health Board") and Jefferson County Department of Health ("Health Department") discriminated against him due to his race and national origin. Plaintiff also claims that Defendants denied him this promotion in retaliation for filing grievances with the Personnel Board of Jefferson County ("Personnel Board") and the Equal Employment Opportunity Commission ("EEOC").

On December 14, 2016, the Magistrate Judge entered a Report and Recommendation (Doc. # 39), recommending that Defendants' Motion for Summary Judgment (Doc. # 21) be granted in part and denied in part. Specifically, the Magistrate Judge recommended that the court grant Defendants summary judgment on Plaintiff's hostile work environment claim and deny summary judgment on Plaintiff's race discrimination, national origin discrimination, and

retaliatory failure to promote claims.[1]  (Doc. # 39 at 12, 19-20).  The Magistrate Judge provided the parties fourteen days in which to file objections.  Defendants have objected to the Magistrate Judge's recommendation and argue that the court should grant summary judgment as to Counts One, Two, and Four.  (Doc. # 40 at 1).  The parties have fully briefed the objections.  (Docs. # 40-1, 42, 43).  After careful review, and with the benefit of oral argument, the court concludes that Defendants' objections are due to be sustained in part and overruled in part.

I.      **Standard of Review**

The court reviews Defendants' objections, which contest the Magistrate Judge's legal conclusions, *de novo*.  28 U.S.C. § 636(b)(1).  Since Defendants have not objected to the Magistrate Judge's factual findings, they are adopted and incorporated herein.  Certain facts are re-stated here for emphasis, and additional facts relevant to Plaintiff's Title VII retaliation claim are discussed.[2]

II.     **Statement of Facts**[3]

In 2006, the Health Department hired Plaintiff as an international program manager.  (Doc. # 39 at 3).  It assigned Plaintiff to the Community Health Service Center ("Community

---

[1] Confusingly, Count Three of the Amended Complaint, which Plaintiff describes as a retaliation claim, actually contains allegations for a hostile work environment claim.  (*See* Doc. # 2 at ¶¶ 37-39).  The Report and Recommendation analyzed the hostile work environment claim in its section discussing Count Four.  (Doc. # 39 at 19-20).  Count Four of the Amended Complaint contains allegations of retaliation.  (Doc. # 2 at ¶¶ 40-43).  The Report and Recommendation referenced Plaintiff's retaliation claims in a discussion of Count Three.  (Doc. # 39 at 12).  Consistent with the allegations made in Plaintiff's Amended Complaint, in this memorandum opinion and the corresponding order, the court's discussion of Count Three addresses the hostile work environment assertions made in Paragraphs 37 through 39 of the Amended Complaint.  The court's discussion of Count Four addresses the retaliation allegations made in Paragraphs 40 through 43 of the Amended Complaint.

[2] Defendants have not contested the Magistrate Judge's denial of their motions to strike.  (Doc. # 39 at 20).

[3] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, the undisputed facts in the Magistrate Judge's Report and Recommendation, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts that could be established through live testimony at trial.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Health"). (*Id.*). Dr. Teri Chafin supervised Plaintiff while he worked for Community Health. (*Id.*).

In October 2011, Dr. Mark Wilson was appointed as the health officer for the Health Department. (*Id.* at 4). Dr. Chafin recommended during a January 2012 meeting that Plaintiff, Charline Whyte, and Tammie Sawyer be promoted to new positions in Community Health. (*Id.* at 5). Sawyer was an African-American employee, while Plaintiff and Whyte were Latino employees. (*Id.* at 6). Dr. Wilson attended the meeting with Dolores Johnson, a health services administrator for the Health Department, and Judy Madison, the Health Department's chief accountant. (*Id.* at 5).

Sawyer was interviewed for a nurse practitioner position and promoted to nurse practitioner in January 2012. (Doc. # 21-1 at 16). Dr. Chafin requested Sawyer's promotion, and her promotion was approved by the Health Department in January 2012.[4] (*See* Docs. # 22-3 at 2-3; 22-11 at 4).

The parties strongly dispute whether the Health Department approved a health services administrator position for Community Health in its 2013 budget, whether a request for that position was properly submitted by the Health Department, whether the Health Department implemented a hiring freeze, and when the Health Department decided to not approve a health services administrator position for Community Health. When viewed in the light most favorable to Plaintiff, the Rule 56 record indicates that Madison informed Chafin on June 22, 2012 that the

---

[4] At oral argument, Defendants asserted that a certification list for the nurse practitioner position was created before Dr. Chafin requested Sawyer's promotion in January 2012. Indeed, the Rule 56 record indicates that a certification list for clinical nurse practitioners was issued by the Personnel Board on December 28, 2011. (*See* Doc. # 22-3 at 4). At the same time, the Personnel Board's certification list did not state whether it was limited to the clinical nurse practitioner position in Community Health or whether it was for all clinical nurse practitioner positions in the Health Department. (*See id.* at 5). And, Dr. Chafin averred that she conducted the administrative steps to initiate Sawyer's promotion in Community Health during January 2012. (Doc. # 22-2 at 2-3). Ultimately, as explained below, even if the court accepts Plaintiff's argument that Sawyer's promotion process and his promotion process commenced at the same time, Sawyer is not an appropriate comparator.

3

Health Department had approved a budget for Community Health that included a new health services administrator position.[5] (Doc. # 22-15 at 3-6). The approved budget proposed that Plaintiff would be promoted to the administrator position. (*Id.* at 5).

On June 30, 2012, Community Health prepared a request for position form for the health services administrator position. (Doc. # 22-4 at 2). The Health Department's human resources division approved the request. (*Id.*). Johnson confirmed that she approved the request. (*Id.*). The Personnel Board assigned a certification number for the position. (*Id.*). On September 6, 2012, Johnson requested that the Personnel Board cancel the certification for the health services administrator position because it allegedly had been "entered in error." (Doc. # 22-5 at 2). The Personnel Board cancelled this certification before October 2012. (*See* Doc. # 21-2 at 147 ("I called the Personnel Board and talked to Jim Austin. . . . Mr. Austin said that the [Health Department's] request to fill the position has been withdrawn and has not been reinstated.")). Johnson informed Dr. Chafin on September 24, 2012 that the position request had been removed because it was entered in error. (Doc. # 22-2 at 8). Nevertheless, Johnson also told Dr. Chafin that Community Health's health services administrator position had been placed on hold while the deputy health officer determined whether she needed a health services administrator. (*Id.* at 3, 9). The Personnel Board determined that Plaintiff was qualified for the health services administrator position on October 22, 2012. (Doc. # 22-17 at 2-3).

On October 5, 2012, Plaintiff met with Johnson and Rodney Holmes. (*See* Doc. # 21-2 at 142-43 (referring to statements made by Plaintiff during the meeting)). At that meeting, Plaintiff

---

[5] Rodney Holmes, a finance and administration director for the Health Department, informed Chafin and other service center directors on June 22nd that Madison would send an e-mail to them later that day notifying them of which new personnel positions had been included in the 2013 budget. (*See* Doc. # 22-14 at 2 ("The final version of [the vacancy list] is attached and all positions not marked as FREEZE or DELETED can be filled. Later today, Judy [Madison] will be sending an email to each of the service center directors notifying them of this fact. Each service center should carefully consider the possible personnel implications of our upcoming organization-wide focus on efficiency and quality improvement prior to filling a position.").

complained that Johnson had "a personal agenda" against him. (*Id.* at 143). Most significantly, Plaintiff claimed that Johnson abused "her position of power at the Health Department to promote her personal agenda and to advance people of her own racial background while excluding others who are not black." (*Id.*). During a deposition, Johnson recalled a meeting where Plaintiff had "called me a racist and incompetent." (Doc. # 22-1 at 30-31).[6] After the meeting, Holmes stated that he needed to discuss time and attendance issues with Plaintiff and had intended to discuss them during the October 5th meeting, but declined to discuss those issues without Johnson being present. (Doc. # 21-2 at 142).

Plaintiff filed a grievance with the Personnel Board on October 8, 2012. (Doc. # 22-19 at 2-3). In his grievance, Plaintiff complained that Johnson had created a hostile work environment and that Holmes refused to meet with him without Johnson being present. (*Id.* at 3). According to Plaintiff, supervisors at the Health Department were instructed to not contact African-American employees after those African-American employees presented discrimination complaints. (*Id.*). Plaintiff's contention in the grievance was that Holmes only mentioned the time and attendance issues after Plaintiff had raised his complaints against Johnson. (*Id.*). On October 8th, Johnson informed Dr. Chafin that approval of the health services administrator position would be delayed "due to the need for structured interview training." (Doc. # 22-2 at 9).

Dr. Wilson appointed an Executive Management Team that began meeting in July 2012. (Doc. # 21-2 at 6, 9). Johnson was a member of the Executive Management Team. (Doc. # 22-1 at 33). Holmes was also a member of the executive team. (Doc. # 22-2 at 11). On October 9, 2012, Holmes asked Dr. Chafin to present an organizational chart of her proposal for Community

---

[6] All citations to depositions cite to the deposition's page numbers, instead of the electronic page numbers generated by CM/ECF. With respect to non-deposition exhibits, this memorandum opinion cites to the electronically-generated CM/ECF page numbers when referring to exhibits because some of the exhibits lack page numbers.

Health and a business justification for all of her new proposed positions.  (*Id.* at 9-10).  Dr. Chafin met with the Executive Management Team on October 23rd.  (*Id.* at 11).  The management team primarily discussed the proposed promotions for Plaintiff and Charline Whyte during that meeting.  (*Id.* at 11-12).  Dr. Chafin also met with Dr. Wilson on October 24th.  (*Id.* at 12).  Dr. Wilson asked Dr. Chafin whether she believed Johnson discriminated against Plaintiff; Dr. Chafin responded that Johnson had discriminated against Plaintiff and Whyte.  (*Id.*).

In late October 2012, Dr. Wilson asked the Executive Management Team to review the Community Health center and make independent recommendations to him.  (Doc. # 21-2 at 10).  The Executive Management Team recommended that Dr. Wilson dissolve Community Health and reassign its employees to other divisions.  (Doc. # 22-1 at 12).  Dr. Wilson informed Dr. Chafin of his decision to dissolve Community Health on November 15th.  (Doc. # 22-2 at 12).  Dr. Wilson said that Dr. Chafin's proposals for new positions were still being considered, but Plaintiff and Whyte probably would not be promoted.  (*Id.*).  Dr. Wilson commented on some ongoing investigations by the Health Department into Community Health and Plaintiff's grievance during that meeting.  (*Id.* at 12-13).

The Health Department reassigned Plaintiff to the Quality Improvement/Decision Support Service Center.  (Doc. # 21-2 at 11-12).  It is undisputed that, after this transfer from Community Health, Plaintiff remained in the same job classification, received the same salary, and continued to perform the same duties.  (*Id.* at 12, 18).

**III.    Analysis of Defendants' Objections**

Defendants object to the Magistrate Judge's recommendation that the court should deny their motions for summary judgment directed at the claims in Counts One, Two, and Four. The court addresses Defendants' objections below.

> **A.    Whether the Magistrate Judge Erred by Utilizing the Mosaic Theory to Analyze Whether Plaintiff Presented Sufficient Circumstantial Evidence to Survive Summary Judgment**

Defendants' first objection to the Report and Recommendation is that the Magistrate Judge erred by applying the "convincing mosaic" standard enunciated in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), to determine whether Plaintiff presented triable claims of discrimination and retaliation because Plaintiff did not attempt to establish a mosaic of circumstantial evidence in his brief opposing summary judgment. (Doc. # 40-1 at 1-2). This objection is without merit and is due to be overruled.

A district court is obligated to consider the merits of a summary judgment motion before granting summary judgment to a party. *United States v. One Piece of Real Property Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). When reviewing the merits of a summary judgment motion, the court must consider the evidence submitted in support of that motion. *Id.* at 1101-02. Of course, in cases where an opposing party responds to a summary judgment motion, a court is not obligated to conceive of alternative grounds for denying the moving party summary judgment. *See Bradford v. Regions Fin. Corp.*, 2015 WL 247736, at *10 (N.D. Ala. Jan. 20, 2015) (unpublished) (declining to address whether a plaintiff could avoid summary judgment through the *Lockheed-Martin* mosaic standard because plaintiff failed to present an argument on that ground). But, at the same time, a court is not an automaton. It does not commit reversible error by observing an alternative ground for denying summary judgment,

7

based on the submitted evidence, and utilizing that alternative ground. Accordingly, the Magistrate Judge did not err by applying the *Lockheed-Martin* mosaic test when reviewing Defendants' motion, even though Plaintiff did not argue that the court should apply the *Lockheed-Martin* test.

### B. Whether the Magistrate Judge Erred in Concluding that Plaintiff Presented a Convincing Mosaic of Circumstantial Evidence to Support His Race Discrimination and National Origin Discrimination Claims

Defendants' second objection is that Plaintiff failed to present a convincing mosaic of evidence sufficient to meet the *Lockheed-Martin* test. (Doc. # 40-1 at 2-4). They argue that Sawyer's promotion to a clinical nurse practitioner position should be not considered relevant evidence because (1) the promotion "was already underway" when Plaintiff was first considered for a promotion, (2) Plaintiff did not apply for the nurse practitioner position, and (3) Plaintiff would not have been qualified for that position. (*Id.* at 3 & n. 2).

Plaintiff responds that the Report and Recommendation sufficiently outlines the circumstantial evidence that creates a factual dispute regarding Defendants' discriminatory intent. (Doc. # 42 at 3-4). Specifically, Plaintiff asserts that the Magistrate Judge found grounds for disputing Defendants' stated reasons for not promoting him. (*Id.* at 4). According to Plaintiff, the evidentiary mosaic supporting his discrimination claims includes his membership in a protected class, his application for the administrator position, the Health Department's request for a certification list from the Personnel Board, the withdrawal of that request after Plaintiff had been deemed qualified, and the dissolution of Community Health shortly after Plaintiff filed his grievances. (*Id.* at 4-5). Plaintiff states that the court also should consider Defendants' discrimination against Whyte, a Latina employee who worked in Community Health, because

Whyte filed a discrimination action against Defendants in this court and the court denied Defendants summary judgment in her case.  (*Id.* at 5-6).

After careful review, the court concludes that Defendants' objections to the Magistrate Judge's recommendations concerning Plaintiff's race discrimination and national origin discrimination claims are due to be sustained.

Typically, Title VII employment discrimination and retaliation claims that rely on circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See also Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) ("A plaintiff typically makes a case of discrimination through indirect evidence using the burden-shifting framework set out in *McDonnell Douglas* . . . .").  A plaintiff presents a *prima facie* failure to promote claim by showing: (1) he or she is a member of a protected class; (2) he or she was qualified and applied for the promotion; (3) he or she was rejected despite being qualified; and (4) "other equally or less qualified employees who were not members of the protected class were promoted." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).  Plaintiff is unable to meet the *prima facie* test outlined in the *Wilson* opinion because he cannot show that another employee was promoted to the health services administrator position.  It is undisputed that the health services administrator position proposed in Community Health's 2013 budget was never filled before Community Health was dissolved.

Instead of applying the *McDonnell Douglas* framework, the Magistrate Judge found that Plaintiff presented a "convincing mosaic of circumstantial evidence" sufficient to survive Defendants' summary judgment motion.  (Doc. # 39 at 18).  In *Lockheed-Martin*, the Eleventh Circuit held that a plaintiff does not always have to establish a case under the *McDonnell*

*Douglas* framework to present a triable Title VII claim of unlawful discrimination through circumstantial evidence. 644 F.3d at 1328. A plaintiff can present a triable issue of discriminatory intent through a convincing mosaic of circumstantial evidence from which a reasonable jury could find intentional discrimination by the decisionmaker. *Id.* In *Lockheed-Martin*, the circumstantial evidence presented by the plaintiffs was overwhelming and included: (a) a documented history of disparate treatment of Caucasian and African-American employees; (b) a spreadsheet listing employees under investigation by name and race that the defendant's disciplinary review committee used to make disciplinary decisions; and (c) a news program reporting the defendant's struggles with racism in the workplace, which focused on violence by a white supremacist. *See id.* at 1329-40. The Eleventh Circuit concluded, among other reasons, that the plaintiffs presented a triable race discrimination claim because the defendant "consciously injected race considerations into its discipline decision making without an adequate explanation for doing so." *Id.* at 1341.

The evidence of race discrimination or national origin discrimination against Latinos in this case falls far short of that presented in *Lockheed-Martin*. Although Plaintiff has shown that Defendants arguably treated him less favorably than another employee seeking a promotion in Community Health in 2012, he has presented little more than personal speculation to show that Johnson[7] considered Plaintiff's race or national origin when deciding which promotions to approve. *Cf. id.* at 1329-40 (explaining in detail the less favorable treatment received by Caucasians in a defendant's disciplinary process). Plaintiff and his supervisor, Dr. Chafin, perceived that Johnson discriminated against Plaintiff in the promotion process and reported their suspicions. (Docs. # 22-2 at 12; 22-19 at 2-3). Whyte, another Latina employee in Community

---

[7] Because the Rule 56 record is considered in the light most favorable to Plaintiff, the court concludes that Johnson was the decisionmaker who determined whether Plaintiff would be promoted to an administrator because Holmes designated her the "gatekeeper in terms of hiring." (Doc. # 22-14 at 2).

Health, did not receive a promotion recommended by Dr. Chafin in 2012. (Doc. # 39 at 6). Other than these pieces of evidence, the court's extensive review of the record has found no evidence that indicates Johnson considered Plaintiff's race or national origin when deciding whether to approve or finalize the health services administrator position in 2012.[8] While the court necessarily resolves all questions about Chafin's and Plaintiff's credibility at the summary judgment stage in Plaintiff's favor, neither witness provided evidence that Johnson considered Plaintiff's race or national origin when making promotion decisions (besides their unsubstantiated complaints of perceived favoritism). Nor has their testimony produced a triable issue of fact.

In his brief opposing summary judgment, Plaintiff argues that Sawyer is a comparator because she sought a promotion in Community Health, Dr. Chafin requested her promotion in January 2012, along with Plaintiff's and Whyte's promotions, and she received her promotion in January 2012, several months before Community Health's 2013 budget had been approved. (*See* Doc. # 22 at 24-25). But, Sawyer was promoted to a nurse practitioner position, and a health services position is easily distinguishable from the administrative position to which Plaintiff would have been promoted. (*See* Doc. # 39 at 5). More importantly, nothing in the Rule 56 record indicates that the nurse practitioner position needed to be approved as a new position in the 2013 budget, while the health services administrator position was a clearly new position that had to be approved in the 2013 budget. (*See* Doc. # 22-15 at 5 (listing the health services

---

[8] Plaintiff has submitted an affidavit from Sawyer, in which Sawyer asserted that there was no non-discriminatory reason for the Health Department's failure to promote Whyte. (Doc. # 22-11 at 2, 4). Sawyer's affidavit does not discuss Plaintiff's situation, though. Nor does it indicate that Sawyer possessed personal knowledge about the Health Department's promotion process or Plaintiff's qualifications for a health services administrator position. Likewise, the submitted affidavit from Sherry Geter provides no probative evidence of Johnson's discriminatory intent because Geter was denied a promotion more than a year after Plaintiff had been denied a promotion, and Johnson was not the decisionmaker in charge of filling that position. (*See* Doc. # 22-10 at 2 (claiming that Geter was not selected for a promotion in February 2014 and that Jonathon Stanton selected the individual to be promoted)).

administrator position as a new vacancy, but not a nurse practitioner position)).  Thus, Sawyer is not an appropriate comparator, and the differences between her promotion process and that of Plaintiff do not offer substantial evidence to support Plaintiff's Title VII discrimination claims.

The Magistrate Judge supported his conclusion that Plaintiff presented a convincing mosaic of circumstantial evidence with a decision by another judge of this court which concluded that Whyte had presented a convincing mosaic of circumstantial evidence that established a triable Title VII discrimination claim.  (Doc. # 39 at 18 (citing *Whyte v. Jefferson County Board of Health*, Case No. 2:14-cv-00479-KOB)).  However, Plaintiff has not presented any testimony from Whyte to support the discrimination claims in this case.  And, the court has an independent duty to examine the circumstantial evidence presented in this case to determine whether it meets the high *Lockheed-Martin* threshold.  In this case, the court finds there is insufficient evidence for a reasonable jury to conclude that Johnson intentionally discriminated against Plaintiff or consciously considered his race or national origin when deciding whether to approve the proposed promotion.  *Cf. Lockheed-Martin*, 644 F.3d at 1241 (concluding that the defendant had consciously injected race into its disciplinary decisionmaking process).

The court agrees with the Magistrate Judge that there is Rule 56 evidence which contradicts Defendants' claim that Plaintiff was not promoted because of budgetary constraints and Dr. Wilson's review of the Community Health center in October 2012.  (Doc. # 39 at 18 n. 7).  Indeed, a reasonable jury could find that the Health Department included a health services administrator position in Community Health's 2013 budget, anticipated that Plaintiff would be promoted to that position, requested a certification list from the Personnel Board for the position, and did not foreclose the possibility of the promotion until after Plaintiff had been deemed qualified.  Thus, a reasonable jury could conclude that Defendants presented a pretextual reason

for denying the promotion.  But, if there was a pretextual reason proffered, it constitutes pretext for retaliation, not for discrimination.  For this reason, Plaintiff cannot put forth substantial evidence that Defendants actually failed to promote him because of his race or national origin. *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (explaining that a plaintiff has not demonstrated pretext unless he or she shows that an employer's proffered legitimate reason is false and that the true reason for an action was unlawful discrimination).

Plaintiff cannot meet that burden in this case because there is no substantial evidence, other than the self-serving assertions by Plaintiff and Dr. Chafin, to show that Johnson considered Plaintiff's race or national origin when deciding whether to approve the proposed promotion.[9]  These bare assertions of Johnson's discriminatory intent are inadequate for Plaintiff to carry his burden under Rule 56 because neither Plaintiff nor Dr. Chafin had personal knowledge of Johnson's intent.  *See Aristyld v. City of Lauderhill*, 543 F. App'x 905, 907 (11th Cir. 2013) ("Bare and self-serving allegations when the plaintiff has no personal knowledge are inadequate to carry the plaintiff's burden on summary judgment.").  Significantly, in June 2012, the Health Department approved the proposed budget for Community Health that would have granted Plaintiff a promotion, and nothing in the Rule 56 record suggests that Defendants were unaware of Plaintiff's race or national origin at the time of that provisional decision.  While Johnson and other employees had previously taken steps to finalize Plaintiff's promotion, roadblocks to the promotion started to appear around October 2012.  Plaintiff's race and national origin did not change between June 2012 and October 2012.  But, Plaintiff (and **his** supervisor in

---

[9] If Plaintiff was able to present a *prima facie* case of race or national origin discrimination under *McDonnell Douglas*, the court could infer that such discrimination was the cause of Defendants' decision to not promote him because an individual of a different race or national origin would have been promoted.  In this case, that critical circumstantial evidence is simply not in the Rule 56 file.

Community Health) began to present protected complaints of discriminatory conduct by Johnson in early October 2012. Accordingly, the Rule 56 record suggests that Defendants presented a pretextual reason for the decision to not promote Plaintiff to hide retaliation, not to hide discrimination.

      **C.    Whether the Magistrate Judge Erred in Concluding that Plaintiff Presented a Convincing Mosaic of Circumstantial Evidence to Support His Retaliation Claim**

Defendants argue that Plaintiff failed to present a *prima facie* case of retaliation. (Doc. # 40-1 at 4) In addition, they assert that Plaintiff failed to present enough circumstantial evidence of retaliation to avoid summary judgment because the evidence reveals that Defendants never approved the administrator position due to budgetary problems. (*Id.* at 3). They reiterate that Sawyer's promotion cannot be compared to Plaintiff's proposed promotion because the nurse practitioner position had been budgeted for, and Sawyer's promotion process had begun, before Dr. Chafin proposed the new administrator position in January 2012. (*Id.* at 3-4). Alternatively, Defendants argue that Plaintiff's failure to promote claim is not cognizable under Title VII because Title VII did not obligate them to create a new position for Plaintiff. (*Id.* at 5-6). Based on its independent analysis of the *McDonnell Douglas* framework for Title VII retaliation claims, the court concludes that Defendants' objections to the Magistrate Judge's recommendation that the court should deny Defendants summary judgment on the retaliation count in Plaintiff's Amended Complaint are due to be overruled.

As an initial matter, the court is uncertain whether the Magistrate Judge found a mosaic of circumstantial evidence to support Plaintiff's retaliation claim. The magistrate judge found that Plaintiff presented enough circumstantial evidence of "intentional discrimination" to survive summary judgment, but did not specifically address whether Plaintiff presented evidence of

retaliation.  (*See* Doc. # 39 at 18).  Since Title VII retaliation claims typically are reviewed under the *McDonnell Douglas* framework, *see Gate Gourmet*, 683 F.3d at 1255, the court will first address whether Plaintiff has established a triable retaliation claim under that framework.

To present a *prima facie* case of retaliation, a plaintiff must show that (1) he or she engaged in expression protected under Title VII, (2) he or she suffered an adverse employment action, and (3) a causal relationship exists between the protected expression and the adverse action.[10]  *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008).  The third element of a plaintiff's *prima facie* case only requires him or her to demonstrate that (1) the decisionmaker was aware of the protected expression and (2) the adverse action was not wholly unrelated to the protected conduct.  *Id.* at 1376.  Once a defendant provides a legitimate reason for the adverse employment action, a plaintiff must "show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct."  *Id.* at 1375 (citing *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999)).

Here, Plaintiff has established the elements of a *prima facie* retaliation case.  Plaintiff engaged in protected expression by complaining about Johnson's purported racism to Holmes on October 5, 2012 and by submitting a grievance to the Personnel Board on October 8, 2012.  (Doc. # 22-19).  *See also Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) ("[T]he protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those . . . who informally voice complaints to their superiors or who use their employers' internal grievance procedures.").  Plaintiff suffered an adverse employment action when he did not receive a promotion for which he had been

---

[10] Notably, and contrary to Defendants' assertion at oral argument, the *prima facie* case for retaliatory failure to promote does not require Plaintiff to demonstrate that someone else received the promotion.  *See also Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (referring to the *prima facie* retaliation case discussed above to analyze a claim of retaliatory failure to promote).

deemed eligible by the Personnel Board and which had been budgeted for by the Health Department.[11] (*See* Doc. # 22-17 at 2 (e-mail from the Personnel Board, dated October 22, 2012, stating that Plaintiff was eligible for a health services administrator position)). *See also Gary v. Hale*, 212 F. App'x 952, 957 (11th Cir. 2007) (holding that repeated denials of a promotion qualified as adverse employment action). Dr. Chafin's testimony indicates that the Health Department was considering Plaintiff's promotion until November 2012. (*See* Doc. # 22-2 at 11-13 (describing meetings that occurred on October 23, 2012, October 24, 2012, and November 15, 2012)). According to Dr. Chafin, Dr. Wilson informed her that Plaintiff probably would not receive the promotion in November 2012 when he decided to dissolve the Community Health center. (*Id.* at 12-13). Finally, Plaintiff has shown a causal connection between his grievances and the decision to not promote him because (1) Johnson was the decisionmaker for hiring at the Health Department, (2) Johnson was aware of Plaintiff's allegations that she showed favoritism towards employees of her own race, (3) Johnson was a member of the Executive Management Team that reviewed Dr. Chafin's proposals for Community Health, (4) the Executive Management Team recommended dissolving Community Health, which would block Plaintiff's promotion, less than a month after Plaintiff's grievances against Johnson, and (5) Dr. Wilson suggested to Dr. Chafin that Plaintiff's grievance was a contributing factor to the Health Department's decision to dissolve Community Health.[12]

---

[11] Defendants argue that they cannot be held liable under Title VII for failing to establish a new position. (Doc. # 40-1 at 5-6). Defendants cite *Morris v. Thompson*, 2004 WL 3623338 (D. Md. Sept. 29, 2004) (unpublished), to support this argument. But, this case is distinguishable from the *Morris* case because the plaintiff in that action failed to identify an actual position that she applied for. *Id.* at *7-8. In contrast, Plaintiff applied for a position submitted to the Personnel Board, although the position was withdrawn before the Personnel Board finalized a certification list. (*See* Doc. # 22-17 at 2-3 (stating that Plaintiff was eligible for a health services administrator position)).

[12] The court recognizes that Dr. Wilson denied during his deposition that Plaintiff's grievances played a role in his decision to dissolve Community Health. (*See* Doc. # 22-13 at 69). When asked whether he had informed Dr. Chafin that the grievances were a factor, Dr. Wilson asserted that he could not recall. (*Id.* at 68). At oral

Defendants have argued that Plaintiff was not promoted because of Dr. Wilson's decision to dissolve Community Health. (Doc. # 21-1 at 26-27). However, a reasonable jury could dispute this purported non-retaliatory reason for failing to promote Plaintiff. This is so because Dr. Wilson testified that he was not involved in deciding whether to promote most individual employees. (Doc. # 22-13 at 24). Instead, Johnson acted as the "gatekeeper," or decisionmaker, for most promotions. (Doc. # 22-14 at 2). Moreover, Dr. Wilson dissolved the Community Health center based on a recommendation by the Executive Management Team, and Johnson was a member of that management team. Based on when Community Health was dissolved, Johnson's significant involvement in that decision, and Dr. Wilson's statement that Plaintiff's grievances were an issue, a jury could reasonably conclude that Community Health was dissolved to retaliate against Plaintiff and others who engaged in protected conduct by complaining about perceived inequities in the promotion process.

Defendants contend that Plaintiff has not presented a convincing mosaic of circumstantial evidence to support his Title VII retaliation claim. But, even if that is the case, Plaintiff has established a triable Title VII failure to promote retaliation claim under the *McDonnell Douglas* framework. On this alternative ground, the court overrules Defendants' objections to the Magistrate Judge's recommendation that the court deny summary judgment on Plaintiff's retaliation claim.

---

argument, Defendants pointed to this testimony as evidence that Dr. Wilson did not assert that the grievances played any role in the ultimate decision. Putting aside the court's inability to make a credibility determination between Dr. Wilson's and Dr. Chafin's testimony at the summary judgment stage, it is clear that one witness's inability to recall an event does not contradict another witness's testimony that the event occurred. *See Spriggs v. Mercedes-Benz USA, LLC*, 2016 WL 1690677, at *11 (S.D. Ga. Apr. 26, 2016) (observing that a witness's inability to recall statements during his deposition "did not necessarily contradict" his trial testimony regarding the statements).

### D. The Court Adopts the Magistrate Judge's Recommendation Regarding Plaintiff's Hostile Work Environment Claim

In his Report and Recommendation, the Magistrate Judge recommended granting Defendants summary judgment on Plaintiff's hostile work environment claim in Count Three because Plaintiff failed to present "sufficiently severe or pervasive treatment as to constitute an abusive working environment." (Doc. # 39 at 19-20). Plaintiff has raised no objection to this recommendation. After a careful review of the Magistrate Judge's Report and Recommendation and the Rule 56 record, the court concludes that the Magistrate Judge's recommendation that Defendants are due to be granted summary judgment on Count Three is due to be adopted.

## IV. Conclusion

If Plaintiff had never complained that Johnson discriminated against him by delaying his promotion to a new health services administrator position, this case would be over. There is no substantial Rule 56 evidence to support Plaintiff's claims of race discrimination or national origin discrimination. Having said that, there is substantial evidence that the Health Department's employees, including Johnson, completed preliminary steps towards finalizing Plaintiff's promotion before October 2012 and then placed roadblocks in the promotion process shortly after Plaintiff complained about Johnson in early October 2012. On the same day that Plaintiff filed his grievance with the Personnel Board, Johnson informed Dr. Chafin that she would need to complete interview training before the promotion could occur. Within a week of Plaintiff's initial discrimination complaint, Holmes directed Dr. Chafin to provide a business justification for the proposed promotions that had been budgeted for in June 2012. Within a month and a half of the initial discrimination complaint, the Health Department decided to dissolve Community Health and determined that Plaintiff would not be promoted after all. From

this evidence, a reasonable jury could conclude that Defendants retaliated against Plaintiff for his protected conduct by refusing to promote him to the administrator position.

For the reasons stated above, the Magistrate Judge's Report and Recommendation (Doc. # 39) is due to be adopted and approved in part and rejected in part.  Defendants' Objections (Doc. # 40) are due to be sustained in part and overruled in part.  Defendants' Motion for Summary Judgment (Doc. # 21) is due to be granted with regard to Counts One, Two, and Three.  Defendants' Motion is due to be denied with regard to Count Four.  A separate order will be entered.

**DONE** and **ORDERED** this April 5, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE